**UNITED STATES of America**

v.

**EIGHT REELS OF FILM.**

**No. DR–77–CA–23.**

United States District Court,
W. D. Texas,
Del Rio Division.

Nov. 15, 1978.

Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Oliver S. Heard, Jr., San Antonio, Tex., for defendant.

## ORDER GRANTING GOVERNMENT'S MOTION FOR FORFEITURE

SUTTLE, District Judge.

On April 13, 1978, the above-entitled and numbered cause came on for hearing before the court, and, after considering the evidence and exhibits adduced by both parties and the arguments of respective counsel, the court makes the following findings:

On December 31, 1976, the claimant, Anna Galt, entered the United States from the Republic of Mexico at the Port of Entry of Del Rio, Texas. At the time, Ms. Galt was accompanied by Mr. Jack Mannen and Mr. Bill Dunckling. Ms. Galt was driving a 1974 Dodge Colt. Upon arriving at the primary inspection station, Ms. Galt made a negative declaration, indicating that she was not bringing anything from Mexico. Ms. Galt was referred to the secondary inspection station, where a search of the vehicle's trunk disclosed eight reels of film. Customs Inspector Hayslip viewed portions of the film and seized the film under Section 1305 of Title 19, United States Code.

Thereafter, on October 21, 1977, the United States of America filed a Complaint for Forfeiture, praying that the films be condemned and forfeited to the United States for destruction in accordance with the applicable law and regulations. Ms. Galt has filed a Petition for Remission or Mitigation of Forfeiture of the films, and has been represented throughout these proceedings by Oliver S. Heard, Jr.

On April 13, 1978, the court viewed each of the films in its entirety. At the conclusion of the showing of the films, Ms. Galt withdrew her claim to the film marked as Government's Exhibit 7A. Therefore, the films in question are those admitted into evidence as Government's Exhibits 4A, 5A, 6A, 8A, 9A, 10A, and 11A.

This is an *in rem* action brought by the United States of America, seeking the condemnation and forfeiture of the films themselves. This is not an *in personam* action against the owner or possessor of the films, and it is not in the nature of a criminal proceeding. The court is sitting both as a trier of the facts and of the law, and must apply the law as it currently exists to the facts in evidence in determining the disposition of this case. The court is guided by the series of cases dealing with pornography and obscenity decided by the Supreme Court of the United States during the October, 1972, term. The Supreme Court's exhaustive discussion begins with *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and continues through *United States v. Orito*, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973).

*Miller v. California, supra*, sets forth the standards that this court must follow in determining whether material is obscene.

The basic guidelines for the trier of fact must be:

(a) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest,

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole lacks serious literary, artistic, political or scientific value.

The court in *Miller, supra,* also listed what it described as a "few plain examples" of what could be proscribed by statute:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

After viewing the films, the court finds that the films in issue contained and were dominated by exactly the types of activities described by the *Miller* court as plain examples of what could be proscribed. Moreover, it is the opinion of the court that the average person in the Western District of Texas, applying contemporary community standards, the community being comprised of the Western District of Texas, would find that the materials contained within these films, taken as a whole, appeal to the prurient interest. Further, the court is of the opinion that each of these films depict, in a patently offensive way, sexual conduct proscribed by Section 1305 of Title 19, United States Code, as interpreted in *United States v. Twelve 200-Ft. Reels of Super 8 mm. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). In addition, the court finds that each of these films, taken as a whole, lacks serious literary, artistic, political, or scientific value.[1]

Claimant contends that, even if the films are deemed obscene, the films may not be seized because they were not imported within the meaning of 19 U.S.C. § 1305. Claimant testified that the materials were purchased in Texas and were never removed from the locked trunk until seized at the border. She also testified that she had forgotten they were in the trunk and could not, therefore, have formed any intent regarding their importation. However, this is an *in rem* action against the films themselves, not a criminal case against the owner of the films. Thus, intent in the criminal sense is irrelevant.

If the claimant is attempting to carve out some exception based upon private use, the Supreme Court has already delineated the home as the only private area where pornography must be free of government interference. *Cf. Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *United States v. Twelve 200-Ft. Reels of Super 8 mm. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973).

> We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others . . . *Nor is there any correlative right to transport obscene material in interstate commerce . . . Stanley's* emphasis was on the freedom of thought and mind in the privacy of the home. But a port of entry is not a traveler's home . . . This is not to say that Congress could not allow an exemption for private use, with or without appropriate guarantees . . or permit the transportation of obscene material under conditions insuring privacy. But Congress has not seen fit to do so . . . The Constitution does not compel, and Congress has not authorized, an exception for private use of obscene material . . . [Emphasis added]

*United States v. 12 200–Ft. Reels of Film, supra,* 413 U.S. at 128–129, 93 S.Ct. at 2669. *In accord: United States v. Orito, supra.*

---

1. Claimant contends that the court is unable, without the aid of expert testimony, to determine whether the films in issue are obscene as judged by contemporary community standards in the Western District of Texas. While there may be particular cases in which the court would have difficulty making a determination of obscenity, this is not one of those situations. The films in question are so clearly obscene by any community standards that expert testimony concerning the Western District of Texas would be unnecessary and superfluous.

Claimant transported films which this court has deemed to be obscene across the border from Mexico to the United States. This conduct constitutes importation within the meaning of 19 U.S.C. § 1305. Accordingly, the films shall be condemned and forfeited to the United States of America.